UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ACE AMERICAN INSURANCE COMPANY | § § § | |
| Plaintiff, | § | |
| v. | § | Civil Action No. _____ |
| | § | |
| M-I, L.L.C. | § § | |
| Defendant. | § | |

## ACE AMERICAN INSURANCE COMPANY'S ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

This Complaint for Declaratory Judgment is filed by ACE American Insurance Company ("ACE") against M-I, L.L.C. ("M-I") pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure to determine an actual case or controversy involving a declaration of rights and obligations under an insurance policy issued by ACE to M-I.

### I. INTRODUCTION

1.1 This dispute arises out of the Macondo Discovery Well blowout in the Mississippi Canyon Block 252 and ensuing fire, explosion and sinking of the vessel known as the *Deepwater Horizon* on April 20, 2010 (the "Deepwater Horizon Incident").

1.2 At the time of the Deepwater Horizon Incident, M-I was performing mud engineering activities within the Macondo Discovery Well pursuant to a written contract between it and BP Exploration and Production, Inc. ("BP").

1.3 M-I contends that it has incurred, and may continue to incur in the future, significant liabilities in connection with the Deepwater Horizon Incident. These liabilities

1

include, but are not limited to, liabilities for damages to individuals and businesses whose persons or properties have been or will be impacted by the Deepwater Horizon Incident.

1.4 M-I is pursuing or intends to pursue coverage for the claims and losses arising out of the Deepwater Horizon Incident under ACE Policy No. HDO G 24940354 (the "ACE Policy").

1.5 ACE is seeking a judgment declaring that no coverage exists under the ACE Policy for any claims against M-I arising out of the Deepwater Horizon Incident.

## II. PARTIES

2.1 Plaintiff ACE is a Pennsylvania corporation with its headquarters at 436 Walnut St., Philadelphia, PA 19106-3703.

2.2 Defendant M-I is a Delaware limited liability company with its principal place of business in Houston, Harris County, Texas. It can be served through its registered agent: Capitol Corporate Services, Inc., 800 Brazos, Suite 400, Austin, Texas 78701.

## III. JURISDICTION AND VENUE

3.1 This Court has jurisdiction of this controversy under 28 U.S.C. § 1332 (a) in that the dispute is between citizens of different states and the amount in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs.

3.2 Venue is proper in this district pursuant to 28 U.S.C. § 1391 because this is a judicial district in which the Defendant is subject to personal jurisdiction and because the policy of insurance was issued and delivered to M-I in Houston, Texas

## IV. BACKGROUND

4.1 BP retained the mud engineering services of M-I to be performed in accordance with a written contract entitled "Contract for Gulf of Mexico Strategic Performance Unit

Offshore Well Services between BP Exploration and Production, Inc. and M-I, L.L.C. (the "BP/M-I Agreement").

4.2     The services under the BP/M-I Agreement included, among other things, that M-I devise and prepare a mud program for the Macondo Discovery Well.

4.3     On or about April 19, 2010, the Macondo Discovery Well had reached a depth of 13,293 feet below the sea floor.

4.4     A blowout commenced on April 20, 2010.

4.5     Gas escaped from the subsea well and into the riser. The gas shot water out of the riser and above the crown of the derrick. The gas subsequently ignited and exploded resulting in the Deepwater Horizon Incident.

4.6     As a result of the Deepwater Horizon Incident, numerous lawsuits have been filed against M-I alleging that it failed to maintain the appropriate drilling mud weight before and during the drilling operation of the Macondo Discovery Well. These lawsuits include, but are not limited to, allegations of liabilities for damages to individuals and businesses (collectively the "Complaints").

### V.     THE ACE POLICY

5.1     The ACE Policy issued to M-I has a policy period of April 1, 2010 through April 1, 2011. The coverage afforded under the ACE Policy is subject to certain terms, conditions, limitations, and exclusions.

**A.     The Watercraft Exclusion**

5.2     The ACE Policy contains an Aircraft, Auto Or Watercraft Exclusion (the "Watercraft Exclusion") that operates to exclude coverage for all claims arising out of the Deepwater Horizon Incident.

5.3 The Complaints asserted against M-I contain allegations that the *Deepwater Horizon* was a vessel used and chartered or operated by BP.

5.4 BP is an additional insured under the ACE Policy by virtue of the terms, conditions, and limitations contained in the BP/M-I Agreement and in accordance with the terms and conditions of the ACE Policy.

5.5 Pursuant to Articles 20.1 and 20.2 of the BP/M-I Agreement, M-I agreed to purchase certain types of insurance coverage, including Commercial General Liability Insurance. Article 20.1 of the BP/M-I Agreement also provides:

> All insurance . . . other than Employers Liability Insurance/Workmen's Compensation only, shall to the extent of the liabilities assumed and indemnities offered by Contractor [M-I] under the Contract, include Company [BP], co-venturers and its and their respective affiliates as additional insured.

5.6 The ACE Policy provides Commercial General Liability Insurance, and the contractual requirement under the BP/M-I Agreement for extension of additional insured status for BP is addressed in Endorsement #18. *See* Ex. A  Endorsement #18 of the ACE Policy is entitled "Additional Insured – Designated Person or Organization" and provides as follows:

> SCHEDULE
> Name of Additional Insured Person(s) Or Organization(s)
> Any person or organization whom you [M-I] have agreed to include as an additional insured under a written contract, provided such contract was executed prior to the date of loss.
>
> . . .
>
> Section II – Who Is An Insured is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf . . . [in] the performance of your ongoing operations . . . .

*See* Ex. A, Endorsement #18.

5.7   Because BP is an additional insured under the ACE Policy, the Watercraft Exclusion operates to exclude coverage under the ACE Policy for all losses arising out of the Deepwater Horizon Incident.  The Watercraft Exclusion provides, in pertinent part, as follows:

> This insurance does not apply to:
>
> . . .
>
> "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any . . . watercraft owned or operated by or rented or loaned to <u>any</u> insured.  Use includes operation and "loading and unloading."
>
> This exclusion applies even if the claims against <u>any</u> insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any . . .watercraft that is owned or operated by or rented or loaned to <u>any</u> insured.
>
> This exclusion does not apply to:
>
> (1)   . . .
>
> (2)   A watercraft you do not own that is:
>
>   (a)   Less than 50 feet long; and
>
>   (b)   Not being used to carry persons or property for a charge;
>
> (3)   . . .
>
> (4)   Liability assumed under any "insured contract" for the ownership, maintenance or use of . . . watercraft; or
>
> (5)   . . .

Ex. A at Exclusion G. in "2. Exclusions" of Section I–Coverages, Coverage A Bodily Injury and Property Damage Liability as amended by Endorsement #13 (emphasis added).

5.8   The Watercraft Exclusion references the phrase "any insured" under the ACE Policy, which term encompasses an additional insured.

5.9     Thus, if any insured meets the parameters of the Watercraft Exclusion, it will operate to exclude coverage for all insureds under the ACE Policy.

5.10    As noted above, BP qualifies as an additional insured under the ACE Policy.

5.11    BP was leasing and using the *Deepwater Horizon* under a charter agreement with Transocean at the time of the Deepwater Horizon Incident.

5.12    The *Deepwater Horizon* was 396 feet long and 256 feet wide.

5.13    The Watercraft Exclusion operates to exclude coverage for all insureds under the ACE Policy.

**B.      The Professional Liability Exclusion**

5.14    The ACE Policy also contains exclusions entitled "Professional Liability Exclusion Endorsement" in Endorsement #15 and "Exclusion – Engineers, Architects or Surveyors Professional Liability" in Endorsement # 27. These exclusions (collectively the "Professional Services Exclusions") also operate to exclude coverage for all claims arising out of the Deepwater Horizon Incident .

5.15    Endorsement #15 provides that "[t]his insurance does not apply to any damages arising out of any professional services, including, but not limited to, . . . any accounting, architectural, or engineering service." *Id.* at ACE Policy.

5.16    Endorsement #27 provides as follows:

> This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.
>
> Professional services include:
>
> 1.     The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

6

      2.      Supervisory, inspection, architectural or engineering activities.

5.17    M-I was engaged by BP to provide mud engineering activities and services.

5.18    The mud engineering activities and services are engineering activities and services that trigger application of the Professional Services Exclusions as a result of the Deepwater Horizon Incident, thus abrogating coverage under the ACE Policy.

### C.    The Duties of the Insured Condition

5.19    The ACE Policy also contains a condition entitled "Duties in the Event of Occurrence, Offense, Claim or Suit" (the "Duties of the Insured Condition") that may operate to exclude coverage for all claims arising out of the Deepwater Horizon Incident. Ex. A, ACE Policy at Condition 2.d., "Duties in the Event of Occurrence, Offense, Claim or Suit," Section IV – Commercial General Liability Conditions.

5.20    The Deepwater Horizon Incident involved a blowout, fire, explosion, or an uncontrolled well condition.

5.21    The Deepwater Horizon Incident has also resulted in pollution from the reservoir associated with the Macondo Discovery Well.

5.22    As noted above, the BP/M-I Agreement expressly provides that BP will assume responsibility for liability arising out of such an event:

> Notwithstanding the provisions of clause 19.3(b) and except as provided by clause 19.1(a), clause 19.1(b) and clause 19.4(b) Company [BP] shall save, indemnify, release, defend and hold harmless Contractor Group [M-I and others] from and against any claim of whatsoever nature arising from pollution and/or contamination including without limitation such pollution or contamination from the reservoir or from the property or equipment of Company Group [BP and others] arising from the property or equipment of Company Group [BP and others] arising from or related to the performance of the Contract.
>
> . . .

7

>Subject to clauses 19.1 and 19.4(b), but notwithstanding anything contained elsewhere in the Contract to the contrary, Company [BP] shall save, indemnify, release, defend and hold harmless Contractor Group [M-I and others] against all claims, losses, damages, costs (including legal costs) expenses and liabilities resulting from:
>
>(a)  loss or damage to any well or hole (including the cost to re-drill);
>(b)  blowout, fire, explosion, cratering, or any uncontrolled well condition (including the costs to control a wild well and the removal of debris);
>(c)  damage to any reservoir, aquifer, geological formation or underground strata or the loss of oil or gas therefrom;
>(d)  . . .

Articles 19.4(a) and 19.6 of the BP/M-I Agreement.

5.23  As a result of Articles 19.4(a) and 19.6 of the BP/M-I Agreement, M-I is entitled to indemnity from BP.

5.24  In spite of this indemnity M-I has not tendered these claims to BP for indemnification as contemplated by Articles 19.4(a) and 19.6 of the BP/M-I Agreement. This unilateral decision by M-I constitutes a voluntary assumption of an obligation. Furthermore, if M-I has elected, or will elect, to incur defense costs without first attempting to seek indemnification from BP as contemplated by Articles 19.4(a) and 19.6 of the BP/M-I Agreement, such an election constitutes a voluntary payment of these costs. The ACE Policy prohibits any voluntary assumption of an obligation by M-I, as well as any voluntary payments, if any, that have been or may be made by M-I.

5.25  The ACE Policy contains a Condition which provides as follows:

>No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

Ex. A, ACE Policy at Condition 2.d., "Duties in the Event of Occurrence, Offense, Claim or Suit," Section IV – Commercial General Liability Conditions.

5.26   ACE has not been asked to consent to, nor has it consented to, any assumption of an obligation or to these payments; rather, ACE has encouraged M-I to tender these claims to BP. As a result of M-I's unilateral decision declining to tender these claims to BP, M-I has violated the Duties of the Insured Condition of the ACE Policy, and ACE has been prejudiced thereby. Therefore, M-I's actions have obviated coverage under the ACE Policy.

**D.   The Pollution Exclusion**

5.27   The ACE Policy also contains an exclusion entitled "Pollution Exclusion–Combination Exception Time Element and Named Perils" found in Endorsement # 14 (the "Pollution Exclusion").

5.28   The Pollution Exclusion provides that ACE has no duty to defend M-I against any and all pollution claims arising out of the Deepwater Horizon Incident. Ex. A, Endorsement 14.

5.29   The last line of the Pollution Exclusion states: "[n]otwithstanding the foregoing, we shall have no duty to defend any 'suit', claim or proceeding arising out of or in any way related to 'pollution'." *Id.* The Pollution Exclusion defines the terms "Pollution" and "Pollutants" as follows:

> "Pollution" means the actual, alleged, or potential presence in or introduction into the environment of any "pollutants", if such "pollutants" have, or are alleged to have, the effect of making the environment impure, harmful, or dangerous. Environment includes any air, land, structure or the air therein, watercourse or water, including underground water, and biota.
>
> "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, bacteria, virus, and waste.

*Id.*

5.30 Crude oil, methane, and other discharges from the Macondo Discovery Well in the Mississippi Canyon Block 252 fall within the definition of "pollutants" under the Pollution Exclusion. *Id.*

5.31 The discharges are solid, liquid, or gaseous, and the substances discharged are irritants or contaminants. The presence of these discharges in the "environment" – in the ocean and atmosphere and on the seabed – makes the "environment impure, harmful or dangerous." *Id.*

5.32 The fact that these pollutants were discharged into the environment and have made the environment "impure, harmful, or dangerous" establishes that their presence in or introduction into the environment constitutes "pollution." *Id.*

5.33 Consequently, ACE has no duty to defend any lawsuit, claim or proceeding arising out of or in any way related to the pollution from the Deepwater Horizon Incident.

5.34 In addition to the aforementioned language of the Pollution Exclusion, that exclusion also contains the following provision:

> Notwithstanding anything to the contrary in the foregoing paragraphs [the exception] and regardless of the cause of the "pollution", this policy shall not apply to:
>
> 1. loss of, damage to or loss of use of property directly or indirectly resulting from subsurface operations of the insured, and/or removal of, loss or damage to subsurface oil, gas or other substance....

(hereinafter, the "Subsurface Exclusion").

5.35 M-I's operations for the Macondo Discovery Well were subsurface in nature. Accordingly, no coverage is afforded under the ACE Policy for any claims against M-I arising out of the Deepwater Horizon Incident for loss of, damage to or loss of use of any property resulting from the subsurface operations of M-I, whether on or in proximity to the *Deepwater*

*Horizon* vessel and Macondo Discovery Well or any property damage occurring away from the *Deepwater Horizon* vessel and Macondo Discovery Well.

5.36  Further, the ACE Policy will not apply to any claims against M-I arising out of the Deepwater Horizon Incident for any loss of, damage to or loss of use of property directly or indirectly resulting from removal of, loss or damage to subsurface oil, gas or other substance.

5.37  The ACE Policy will therefore not respond to any property damage claims against M-I arising out of the Deepwater Horizon Incident. Any coverage for such claims is barred by application of the Pollution Exclusion.

### E.  The Medical Payments Exclusion

5.38  The ACE Policy does not afford any coverage for Coverage C Medical Payments. *See* Ex. A at Endorsement #26, entitled, "Exclusion – Coverage C – Medical Payments." Thus, in the event that M-I tenders such claims to ACE under the ACE Policy, ACE has no obligation to pay these expenses under that policy.

### VI.  DECLARATORY JUDGMENT

6.1  The allegations contained in Paragraphs 1.1–5.38 are incorporated by reference herein.

6.2  On June 8, 2010, M-I presented ACE with correspondence regarding claims or suits against M-I. This correspondence presents an actual and existing controversy between ACE and M-I with respect to the existence and scope of any obligations of ACE in connection with M-I's liabilities emanating from the Deepwater Horizon Incident. The ACE Policy, however, does not respond to any claim or suit arising out of the Deepwater Horizon Incident.

6.3  Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201-2202, ACE seeks a judicial declaration of its rights and duties to M-I, if any, under the ACE Policy in connection with M-I's liabilities related to the Deepwater Horizon Incident. The Court's declaration will

provide the parties with certainty with respect to their rights and obligations under the ACE policy, and therefore will serve the interests of justice.

  6.4  ACE hereby seeks the following declarations:

    A.  The Watercraft Exclusion contained in the ACE Policy operates to exclude coverage under the ACE Policy for all losses claimed against M-I arising out of the Deepwater Horizon Incident because:

      1.  BP and its affiliates are additional insureds under the ACE Policy; and

      2.  The *Deepwater Horizon* was a vessel, and it was used, operated, and rented by a BP affiliate;

    B.  The Professional Liability Exclusions contained in Endorsements #15 and #27 of the ACE Policy operate to exclude coverage for all claims against M-I arising out of the Deepwater Horizon Incident because, at all material times of the Deepwater Horizon Incident, M-I was engaged in performing professional services for BP. These professional services included, but were not limited to, the following:

      1.  The preparing, approving, or failing to prepare maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

      2.  Supervisory, inspection, architectural or engineering activities;

    C.  M-I has violated the "Duties in the Event of Occurrence, Offense, Claim or Suit" condition of the ACE Policy thereby excluding coverage for all claims arising out of the Deepwater Horizon Incident because:

      1.  the Deepwater Horizon Incident involved a blowout, fire, explosion, or an uncontrolled well condition;

      2.  The BP/M-I Agreement provides for defense and indemnity in favor of M-I for claims arising out of:

        a.  any loss or damage to any well or hole (including the cost to re-drill);

        b.    blowout, fire, explosion, cratering, or any uncontrolled well condition (including the costs to control a wild well and the removal of debris); or

        c.    damage to any reservoir, aquifer, geological formation or underground strata or the loss of oil or gas therefrom; and

    3.    M-I has elected not to tender any and all claims arising out of the Deepwater Horizon Incident to BP;

D.    ACE has no duty to defend M-I against any and all pollution claims arising out of or in any way related to the Deepwater Horizon Incident;

E.    The Pollution Exclusion contained in Endorsement #14 of the ACE Policy operates to exclude coverage for all claims against M-I arising out of the Deepwater Horizon Incident.

F.    ACE has no obligation to pay any expenses under Coverage C – Medical Payments of the ACE Policy;

G.    ACE has no duty to defend any suit, claim or proceeding arising out of or in any way related to M-I's liabilities concerning the Deepwater Horizon Incident; and

H.    M-I is not entitled to coverage under the ACE Policy for any of M-I's liabilities related to the Deepwater Horizon Incident.

6.5    ACE pleads all other conditions, terms, limitations, definitions and exclusions contained in the ACE Policy, which may be found to be applicable, and ACE specifically reserves the right to amend this Complaint for Declaratory Judgment as additional and/or more specific information becomes available.

## VII.    ATTORNEYS' FEES

7.1    Pursuant to Chapter 38 and Section 37.009 of the Texas Civil Practice and Remedies Code and 28 U.S.C. § 2202, ACE requests recovery of its attorneys' fees and costs.

## VIII. PRAYER

8.1  ACE American Insurance Company prays for declaratory judgment in its favor confirming that it has no duty to defend and no duty to indemnify M-I, L.L.C. under Policy No. HDO G 24940354 (the "ACE Policy") for any claims against M-I, L.L.C. arising out of the Deepwater Horizon Incident, and further prays for all such other and further relief as equity and the justice of this cause may require and permit.

Respectfully submitted,

BROWN SIMS, PC

By: /s/ Kenneth G. Engerrand
    Kenneth G. Engerrand
    Texas Bar No. 06619500
    Southern District I.D. 2078
    Charles Clayton Conrad
    Texas Bar No. 24040721
    Southern District I.D. 37220
    Michael A. Varner
    Texas Bar No. 20499425
    Southern District I.D. 15111
    1177 West Loop South, Tenth Floor
    Houston, Texas 77027-9007
    Tel: 713.629-1580
    Fax: 713.629-5027

ATTORNEYS FOR PLAINTIFF
ACE AMERICAN INSURANCE COMPANY